UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENYS NIKONOV, Individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLIRT NY INC. d/b/a FLIRT BEAUTY BOUTIQUE, VIOLETA CHULPAYEV, and ARIEL CHULPAYEV, Jointly and Severally,<br><br>Defendants. | ECF CASE<br><br>No.: _____<br><br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

1.    Plaintiff Denys Nikonov ("Nikonov") asserts claims of disability-based discrimination under New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") against his former employer, Defendants Flirt Ny Inc. d/b/a Flirt Beauty Boutique, Violeta Chulpayev and Ariel Chulpayev (collectively, "Defendants").

2.    Nikonov alleges on his behalf and other similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23 (a) and (b), that Defendants willfully violated the New York Labor Law by (i) failing to pay wages for all hours worked, (ii) failing to pay overtime premium pay, (iii) failing to pay spread-of-hours pay, (iv) unlawfully retaining gratuities, (v) failing to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1, and (vi) failing to provide an accurate wage statement under N.Y. Lab. Law § 195.3.

3.    Nikonov alleges on his behalf and other similarly situated current and

former Defendants' employees and those who elect to opt into this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that Defendants willfully violated the FLSA by (i) failing to pay overtime premium pay and (ii) unlawfully retaining gratuities.

## JURISDICTION

4.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, supplemental jurisdiction over Nikonov's state law claims under 28 U.S.C. § 1367, and jurisdiction over his FLSA claims under 29 U.S.C. § 216(b).

5.     Venue is proper under §1391(b)(2) as a substantial part of the events giving rise to the claims occurred in this District: Defendant employed, discriminated against, and wrongfully terminated Nikonov in New York, New York.

6.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

7.     Nikonov was, at all relevant times, an adult individual residing in New York, New York.

8.     Flirt Ny Inc. d/b/a Flirt Beauty Boutique ("Flirt Beauty") is a domestic business corporation organized under New York law, with its principal place of business at 1014 2nd Avenue, New York, New York 10022.

9.     Flirt Beauty, upon information and belief, is an enterprise engaged in commerce or in the production of goods for commerce. Flirt Beauty is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least

$500,000.00. These goods and materials that have been produced for and moved in commerce, which its employees have handled, include, but are not limited to, various hair products, hair color, shampoo, conditioner, hairdryers and curling irons .

10.     Defendant Violeta Chulpayev ("Defendant Violeta") is an individual who resides in the State of New York, and upon information and belief, owns, operates and controls Flirt Beauty's day-to-day operations and management and jointly employed Nikonov and other similarly situated employees at all relevant times.

11.     Defendant Ariel Chulpayev ("Defendant Ariel") is an individual who resides in the State of New York and, upon information and belief, owns, operates and controls Flirt Beauty's day-to-day operations and management and jointly employed Nikonov and other similarly situated employees at all relevant times.

12.     Each Defendant, either directly or indirectly, has hired and fired Nikonov and other employees, controlled their work schedule and employment conditions, determined their payment rate and method, and kept at least some records regarding their employment.

<u>STATEMENT OF FACTS</u>

13.     Flirt Beauty is a hair salon located at 1014 Second Avenue, New York, New York 10022. Defendants also own and operate a spa and brow salon in Manhasset, New York called Flirt Spa & Brow Bar.

14.     Upon information and belief, Defendants employ 11 or more employees.

Duties Performed and Hours Worked[1]

15.    Defendants employed Nikonov as a hair stylist from February 8, 2019[2] until April 20, 2019.

16.    As a hair stylist, he was responsible for styling, cutting, doing hair extensions, coloring and washing, blow drying Defendants' clients' hair. Additionally, Defendants required him to do extra tasks outside of his hair stylist duties, including traveling to supply stores to purchase products, inventorying the products, creating social media and promotional photographs for Defendants' advertising and social media, and cleaning the salon's bathrooms, floors, mirrors, and washing dishes.

17.    Nikonov's start and end of work day, as a hair stylist, usually depended on the time when his first and last clients were scheduled, as such his work schedule varied slightly throughout his employment.

18.    Nikonov generally worked 4 to 6 days per week.

19.    When working weekdays, he worked from 9:45 a.m. or 10:30 a.m. to 8:00 p.m. When working Saturdays, he worked from 9:45 a.m. or 10:30 a.m. to 7:00 p.m., and occasionally as late as 8:40 pm. When working Sundays, he worked from 10:00 a.m. or 11:00 a.m. to 6:00 or 7:00 p.m. However, on multiple occasions, he worked as late as 9:00 p.m. to 11:45 p.m.

20.    During his employment with Defendants, Nikonov often worked more than 10 hours per day.

---

[1] These subject lines are included only for organizational purposes.
[2] The dates and hours in the Complaint are estimates based on Plaintiff's memory and from partial notes or copies of records.

21.    During his employment with Defendants, Nikonov regularly worked more than 40 hours per week, at least 2 to 3 weeks per month.

22.    During his employment, Defendants either did not allow Nikonov an uninterrupted 30-minute meal break or permitted him at most a 5 to15-minute break.

23.    The following are examples of when he worked more than 40 hours in a week: the week on February 18, 2019, he worked 5 days and approximately 47 hours; the week of February 25, 2019, he worked 6 days and approximately 55.5 hours; the week of March 18, 2019, he worked 5 days and approximately 50.8 hours; and from April 1, 2019 to April 20, 2019, Nikonov worked between 44 and 48 hours per week.

24.    During his employment, in addition to his regular duties as a hair stylist, Defendants regularly required Plaintiff Nikonov to work on his days off without paying him for those hours.

25.    From February to April 2019, in addition to performing his regular hair styling duties, Defendants required Nikonov to do photoshoots on 2 to 4 separate occasions for their social media and promotional materials. For each photoshoot, Nikonov worked between 3 and 5.50 hours preparing, coloring, cutting and styling hair. For two photoshoots in April, he worked from 10:00 or 11:00 a.m. to 5:00 p.m., selecting and purchasing clothes for the models (collectively "Photoshoot Hours").

26.    In February 2019, Defendants required Nikonov to perform inventory and accounting of their products and supplies on 3 to 4 of his days off, for 5 to 7 hours each time ("Inventory Hours")

27.     During his employment, Defendants required Nikonov to assist them in purchasing supplies for the salon on his days off, working from 12:00 p.m. or 1:00 p.m. to 6:00 p.m. or 7:00 p.m., totaling 5 to 7 hours. ("Supply Hours").

28.     Defendants did not pay Nikonov any compensation for the Photoshoot, Inventory and Supply Hours.

29.     Defendants are aware that Nikonov worked the Photoshoot, Inventory and Supply Hours because they directed him to do so, and Defendant Ariel for example, accompanied him once or twice when he purchased supplies.

30.     From reviewing the schedule, speaking with them and personal observations, Nikonov knows that other hair stylists, barbers, manicurists, cosmetologists and receptionists were, like him, regularly scheduled to work and did, in fact, work more than 40 hours in a week.

31.     Defendants have a big turnover problem with their employees, with many quitting or getting fired.

<u>Hourly Rate, Spread-of-Hours, Overtime and Unpaid Hours</u>

32.     Throughout his employment, Defendants paid Nikonov his wages by company check or sometimes cash, which combined his hourly rate in February and March 2019, and his commissions in April 2019, together with the credit card tips left to him by his customers. However, Defendants failed to explain and break down how much of his pay was from credit tips and how much of it was from his hourly rate or commissions.

33.     From February 2019 to March 2019, Defendants paid Nikonov $15.00 per hour for some of the hours he worked; they failed to pay him for every hour that he worked.

34.     When paying him an hourly rate, Defendants did not pay Nikonov overtime premium pay for any hours he worked over 40 hours in any given week.

35.     From April 1, 2019 to April 20, 2019, Defendants paid Nikonov solely on a commission basis, paying him 40% of the total price for the services he performed.

36.     When being paid strictly commissions, Defendants did not give Nikonov a commission sales agreement or any document showing how his commissions were calculated.

37.     When being paid strictly commissions, Defendants did not ensure his effective hourly rate equaled the statutory minimum wage by tracking his hours worked and dividing those hours by the commissions he received.

38.     When being paid strictly commissions, Defendants did not ensure his effective hourly rate equaled 1.5 times the statutory minimum wage for every hour he worked above 40 in a week.

39.     In April 2019, Defendants gave Nikonov a total of five company checks, which allegedly included his commissions and his credit card tips, the checks were in the following sums: April 5, 2019 for $654.20; April 12, 2019 for $592.60; April 18, 2019 for $552.00[3]; April 19, 2019 for $313.20 and on April 26, 2019 for $768.40.

40.     Defendants deducted $200 of his earned commissions from his April 26, 2019 paycheck, for allegedly not finishing the entire day of work after they wrongfully terminated him in the middle of the day and made him leave the salon. When he complained

---

[3] On April 18, 2019, Defendants issued Nikonov another check for $558.00 but it bounced and he had to ask for a new check, which Defendants wrote for $552.00, shorting him $4.00.

that $200 was missing from his paycheck, they then deducted another $200 from the paycheck and gave him a check that was approximately $400 short.

41.     During the month of April 2019, Nikonov's effective hourly rate for all hours worked fell below the statutorily required minimum hourly rate of pay at least once: for the week of April 5, 2019, he was paid $654.20 and worked 46 hours, equaling $14.21 per hour; and for the week of April 19, 2019, he was paid $313.08 for 46 hours, equaling $6.80 per hour.

42.     Since Nikonov's paychecks also included his weekly credit card tips and because Defendants failed to explain his pay, his hourly rate of pay would be even lower than calculated above: for the week of April 5, 2019, if $180 of the $654.20 are his tips, the hourly rate is $10.30 ($474.00/46 hours).

43.     For the days that he was scheduled to and worked more than 10 hours in a day, Defendants did not pay Nikonov spread-of-hours pay: an extra hour at the statutory minimum wage.

Unlawfully Deducted Gratuities

44.     Nikonov regularly received gratuities from his clients.

45.     Clients usually left Nikonov up to $180 of tips on credit cards per week.

46.     The clients paid these gratuities believing 100% of them would go to Nikonov.

47.     Nikonov did not receive 100% of the gratuities that the clients gave him on credit cards.

48.     Defendants regularly retained credit card tips that customers left to Nikonov or other employees.

49.     From February 2019 to March 2019, Defendants unlawfully kept approximately $50 to $100 per week in credit card tips that Nikonov received from clients.

50.     In the last week of April 2019 that Nikonov worked, Defendants unlawfully retained approximately $200 in credit card tips that he received from clients that week.

51.     Defendants did not allow Nikonov and all similarly situated employees to retain all of their tips and as such Defendants are ineligible under federal and state law to take a "tip-credit": the difference between the statutory minimum wage and the rate tipped employees may be paid, against the unpaid minimum and overtime wages owed to Nikonov and other employees.

52.     From speaking with them and based on Defendants having uniform policies, Nikonov knows that, upon information and belief, other hair stylists, barbers, manicurists, cosmetologists and receptionists, like him, were not paid minimum wage, overtime premium pay for the hours they worked in excess of forty each week, were not paid spread-of-hours pay for days in which they worked more than 10 hours in a day, and did not receive all of their gratuities because Defendants retained them.

Labor Law Notice and Wage Statement Violations

53.     Defendants did not provide Nikonov or the other hair stylists, barbers, manicurists, cosmetologists and receptionists the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1 when they were hired or at any point in their employment.

54.     Defendants did not provide Nikonov or other hair stylists, barbers, manicurists, cosmetologists and receptionists a wage statement with each payment of wages as required under N.Y. Lab. Law § 195.3.

Hostile Work Environment and Disability Discrimination

55.    Defendant Ariel and Violeta often screamed and swore at Nikonov and his coworkers at work, telling them that they are "idiots," and regularly threatening to fire them if they did not comply with what he said.

56.    On March 26, 2019, Nikonov told Defendant Violeta that he would like to start working less hours and take Sundays off. In response, she told him that "she has to look for someone else," and fired him.

57.    Nikonov was very distressed about losing his employment.

58.    Later that or next day, Defendant Violeta asked Nikonov to please return to work and disregard her termination of him.

59.    Because Nikonov regularly worked for Defendants over 10 hours a day standing on his feet, most often without any breaks, he developed strong pain and severe swelling in his feet in April 2019, which caused him to have difficulty standing and working.

60.    On or about April 12, 2019, around 7:00 a.m., Nikonov woke up early in the morning with extreme pain and swelling in his feet. He immediately contacted Defendant Violeta telling her that he has to go to the doctor with his feet and that he cannot work that day.

61.    Defendant Violeta told Nikonov that if he takes the day off and goes to the doctor for his feet, she will fire him. Nikonov informed her that he cannot stand on his feet and had no choice due to the severity of his health condition but go to the hospital.

62.    Defendant Violeta informed Nikonov that, because he was going to miss work to go to the hospital, he was terminated, for the second time, and he should not come to work the next day.

63.    The same day, Nikonov went to the hospital to get treatment for his feet.

64.    Later on April 12, 2019, Defendant Ariel called Nikonov and asked him to come to work the next day because he had a lot of client appointments and to disregard Defendant Violeta's termination. Nikonov resumed working for Defendants as requested.

65.    Nikonov suffers from severe migraines.

66.    In or about February 2019, a neurologist prescribed Nikonov migraine treatment, in the form of an injection, which he directed him to administer once a month to prevent the migraines.

67.    Nikonov's migraines stopped when he started to use the injections. However, his migraines returned during his employment with Defendants because of the long hours that he worked, often without taking any breaks, and the hostile work environment and harassment that he endured.

68.    On or about April 20, 2019, Nikonov felt that a migraine may be coming on so around 12:00 p.m., after finishing up with a client, he told Defendant Ariel that he has to take a break to administer the anti-migraine injection and quickly eat a sandwich, before the next client, scheduled for 12:30 p.m.

69.    Defendant Ariel told Nikonov that he cannot take a break and that he must continue working because he had just booked a 2-hour appointment for a walk-in client and that Nikonov must attend to the client immediately.

70.     Nikonov informed Defendant Ariel that he already had a 12:30 p.m. appointment scheduled and could not take or possibly finish the 2-hour walk-in appointment and once again told him that he had to administer his anti-migraine medication. In return, Defendant Ariel yelled and insulted Nikonov and stormed off.

71.     A few minutes later, as Nikonov was injecting himself with the anti-migraine medication in the Flirt Beauty's kitchen, Defendant Ariel ran into the room and began to yell and insult him, told him in Russian to "go sit on a dick," which is a common Russian phrase that means to get lost and get out.

72.      Defendant Ariel wrongfully terminated Nikonov and told him to get the "f*ck out."

73.     Defendants discriminated against Nikonov because of his disabilities and inflicted hostile work environment on him during his employment with them, and as a result of this he has suffered and suffers from severe emotional distress and physical pain and injury.

74.     Defendants' hostile work environment and harassment, including but not limited to repeated terminations for medical issues or requesting to lessen the hours of work, caused Nikonov severe emotional distress and health issues.

75.     As part of his emotional distress, Nikonov has anxiety, depression, insomnia, worsened migraines and has lost approximately 10 pounds in weight since his wrongful termination.

76.     Nikonov was also forced to seek professional help from a therapist, whom he sees weekly.

77.     Because of the emotional distress and being wrongfully terminated, Nikonov's migraines have worsened and he has to continue taking the anti-migraine injections.

78.     Due to Defendants' poor working conditions and their refusal to provide their employees with of breaks during long shifts, Nikonov continues to suffer from pain and swelling in his feet and has incurred medical expenses. He has also been prescribed and now attends physical therapy three times a week for both of his feet.

<u>CLASS ACTION ALLEGATIONS</u>

79.     Nikonov asserts these allegations and claims on his own and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

> All persons whom Defendants employ and have employed who were hair stylists and other comparable tipped positions with different titles, including "hairdressers," "barbers" "manicurist," "cosmetologist" and "receptionists" at any time since July 30, 2013 to the entry of judgment in this case (the "Class Period"), who were non-exempt employees under the New York Labor Law (the "Class Members").

80.     The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Defendants' sole control, upon information and belief, more than 50 Class Members exist.

81.     Nikonov's claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

82. Defendants have acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

83. Nikonov is committed to pursuing this action and has retained competent counsel experienced in employment law, wage and hour law, and class action litigation.

84. Nikonov has the same interest in this matter as all other Class Members and his claims are typical of Class Members'.

85. Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including but not limited to:

a. whether Defendants employed Nikonov and the Class Members within the meaning of the Labor Law;

b. whether Defendants failed to keep true and accurate time records for all hours worked by Nikonov and the Class Members;

c. what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d. whether Defendants failed to pay the Class Members for all the hours that they worked at or above the statutory minimum wage of pay;

e. whether Defendants failed or refused to pay the Class Members overtime pay for all hours worked in excess of 40 hours per workweek;

f. whether Defendants failed or refused to pay the Class Members spread-of-hours pay;

g.      whether Defendants failed to provide Nikonov and the Class Members Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1;

h.      whether Defendants failed to provide the Class Members the required statement with each wage payment under N.Y. Lab. Law § 195.3;

i.      whether Defendants withheld tips or gratuities under the Labor Law, violating N.Y. Lab. Law § 196-d;

j.      whether Defendants qualify for the "tip credit" and whether they gave the Class Members proper notice of the "tip credit" as required by 12 N.Y.C.R.R. §§ 146-1.3 and -2.2;

k.      whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided under the Labor Law in any area where Nikonov and the Class Members are employed;

l.      whether Defendants are liable for all damages claimed hereunder, including but not limited to, interest, costs and disbursements and attorneys' fees; and

m.      whether Defendants should be enjoined from such violations of the Labor Law in the future.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

86.     Under 29 U.S.C. § 206, Nikonov seeks to assert these allegations and claims as a collective action:

> All persons whom Defendants employ and have employed who were hair stylists and other comparable tipped positions with different titles, including "hairdressers," "barbers" "manicurist," "cosmetologist" and "receptionists" at any time since July 30, 2016 to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees under the FLSA (the "Collective Action Members").

87.    Nikonov and the Collective Action Members are similarly situated on several legal and factual issues, including:

a.    Defendants employed the Collective Action Members within the meaning of the FLSA;

b.    Collective Action Members performed similar duties;

c.    Defendants failed to keep true and accurate time records for all hours Nikonov and the Collective Action Members worked;

d.    Defendants willfully or recklessly violated the FLSA;

e.    Defendants failed to pay the Collective Action Members overtime compensation for hours worked in excess of 40 hours per workweek at the proper rate, violating the FLSA and the regulations promulgated thereunder;

f.    Defendants improperly withheld tips and gratuities, violating 29 U.S.C. § 203(m);

g.    whether Defendants are entitled to avail themselves of the "tip credit" for unlawfully retaining the tips, unlawfully deducting credit card tips and failing to properly inform the Collective Action Members of the "tip credit";

h.    Defendants should be enjoined from such violations of the FLSA in the future; and

i.    The statute of limitations should be estopped or equitably tolled due to Defendants' statutory violations.

<u>FIRST CAUSE OF ACTION</u>
FAILURE TO PAY THE MINIMUM WAGE UNDER THE FLSA
(On Behalf of Nikonov and the Collective Action Members)

88.    Nikonov realleges every preceding allegation as if set forth fully herein.

89.    Nikonov consents in writing to be a party to this action under 29 U.S.C. § 216(b), which is attached to this Complaint and incorporated by reference.

90.    Defendants employed and/or continue to employ Nikonov and the Collective Action Members under the FLSA.

91.    Defendants knowingly failed to pay Nikonov and the Collective Action Members the minimum wage rate for all hours worked to which they were entitled under the FLSA.

92.    Defendants were required to pay Nikonov and the Collective Action Members the full minimum wage rate for all hours worked.

93.    Defendants failed to pay Nikonov and the Collective Action Members at the minimum wage and at the "tipped minimum wage" for all hours worked.

94.    Defendants were and are not permitted to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59, because: (i) Defendants failed to inform Nikonov and the Collective Action Members of the provisions of the FLSA, 29 U.S.C. § 203(m); and (ii) Defendants retained a portion of Nikonov's and the Collective Action Members' tips.

95.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies under 29 U.S.C. § 255 and should be equitably tolled between the filing of this lawsuit and when the Court conditionally certifies the collective action.

96.    As a result of Defendants' FLSA violations, Nikonov and the Collective Action Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other

compensation under 29 U.S.C. § 216(b), and such other legal and equitable relief as this Court deems just and proper.

SECOND CAUSE OF ACTION
FAILURE TO PAY THE MINIMUM WAGE
UNDER THE NEW YORK LABOR LAW
(On Behalf of Nikonov and the Class Action Members)

97.     Nikonov realleges every preceding allegation as if set forth fully herein.

98.     Defendants are "employers" under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Nikonov and the Class Members.

99.     The wage payment provisions of Article 6 of the Labor Law and supporting New York State Department of Labor Regulations apply to Defendants and protect Nikonov and the Class Members.

100.     Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Nikonov and the Class Members the statutory minimum wage.

101.     Upon information and belief, Defendants failed to post, in a conspicuous place upon their premises a notice issued by the New York State Department of Labor summarizing minimum wage provisions, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. §§ 137-2.3, *et seq.*

102.     Upon information and belief, Defendants paid Nikonov and the Class Members below the statutory minimum wage.

103.     Defendants failed to pay Nikonov and the Class Members at the statutory "tipped minimum wage."

104.    Defendants were and are not eligible to avail themselves of the Labor Law tipped minimum wage rate under 12 N.Y.C.C.R.R. §§ 137-2.1, 2.2 because: (i) Defendants failed to inform Nikonov and the Class Action Members of the provisions of Labor Law's tip credit provisions; and (ii) Defendants retained a portion of Nikonov and the Class Action Members' tips.

105.    Defendants are accordingly liable to Nikonov and the Class Action Members the difference between the hourly rate at which they paid them and the statutory minimum wage.

106.    Defendants have willfully violated the Labor Law by knowingly and intentionally failing to pay Nikonov and the Class Members the minimum wage.

107.    Due to Defendants' Labor Law violations, Nikonov and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

THIRD CAUSE OF ACTION
FAILURE TO PAY OVERTIME PREMIUM PAY UNDER THE FLSA
(On Behalf of Nikonov and the Collective Action Members)

108.    Nikonov repeats every preceding allegation as if set forth fully herein.

109.    Nikonov consents in writing to be a party to this action under 29 U.S.C. § 216(b), which is attached to this Complaint and incorporated by reference.

110.    Defendants have been and continue to be, employers engaged in interstate commerce or the production of goods for commerce under the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

111.    Defendants employed, or continue to employ, Nikonov and the Collective Action Members within the meaning of the FLSA.

112.    Defendants required to pay Nikonov and the Collective Action Members no less than 1.5 times the regular rate at which they were employed for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

113.    At all relevant times, Defendants had a policy and practice of refusing to pay their employees overtime compensation for their hours worked in excess of 40 hours per workweek.

114.    At all relevant times, Defendants had a policy and practice of refusing to pay their employees for all hours worked over 40 per workweek, violating the FLSA and its regulations, including 29 C.F.R. §§ 785.13, 785.11.

115.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

116.    Defendants have not made a good faith effort to comply with the FLSA with respect to Nikonov and the Collective Action Members' compensation.

117.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies under 29 U.S.C. § 255 and should be equitably tolled between the filing of this lawsuit and when the Court conditionally certifies the collective action.

118.    Defendants have failed to make, keep and preserve records with respect to their employees sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1), 215(a) and 216(b).

119.    As a result of Defendants' FLSA violations, Nikonov and the Collective Action Members have suffered damages by being denied overtime pay in accordance with

the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation under 29 U.S.C. § 216(b), and such other legal and equitable relief as this Court deems just and proper.

FOURTH CAUSE OF ACTION
FAILURE TO PAY THE OVERTIME PREMIUM PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Nikonov and the Class Members)

120.    Nikonov realleges every preceding allegation as if set forth fully herein.

121.    Defendants are employers under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Nikonov and the Class Members.

122.    Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Nikonov and the Class Members 1.5 times their regular rate of pay for all hours they worked in excess of 40.

123.    Defendants failed to pay the Class Members overtime premium pay for any hour they worked above 40 in a week, violating the Labor Law. 12 N.Y.C.R.R. § 142-2.2

124.    Defendants failed to compensate Nikonov and the Class Members at their overtime premium rate for any hours worked in excess of 40 per week.

125.    At all relevant times, Defendants had a policy and practice of refusing to pay their employees for all hours worked over 40 per workweek, violating the Labor Law and its regulations, including 12 N.Y.C.R.R. § 146-1.2, 1.4.

126.    Defendants have willfully violated the Labor Law by knowingly and intentionally failing to pay Nikonov and the Class Members the correct amount of overtime wages.

127.     Due to Defendants' Labor Law violations, Nikonov and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest. N.Y. Lab. Law § 663.

FIFTH CAUSE OF ACTION
FAILURE TO PAY SPREAD-OF-HOURS PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Nikonov and the Class Members)

128.     Nikonov realleges every preceding allegation as if set forth fully herein.

129.     Defendants willfully failed to pay Nikonov and the Class Members one additional hour's pay at the basic minimum wage rate before allowances for each day that their spread of hours exceeded ten hours, violating Part 146 § 146-1.6 of Title 12 of the Official Compilation of Codes, Rules and Regulations.

130.     Defendants paid Nikonov and, upon information and belief, the Class Members below the minimum wage.

131.     By their failure to pay Nikonov and the Class Members spread-of-hours pay, Defendants have willfully violated the N.Y. Lab. Law Article 19, §§ 650, *et seq*. and the supporting New York State Department of Labor Regulations.

132.     Due to Defendants' Labor Law violations, Nikonov and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours pay, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

SIXTH CAUSE OF ACTION
FAILURE TO PROVIDE 195.1 NOTICE UNDER THE NEW YORK LABOR LAW
(On Behalf of Nikonov and the Class Members)

133.     Nikonov realleges every preceding allegation as if set forth fully herein.

134.    Defendants have willfully failed to supply Nikonov and the Class Members with the required Notice and Acknowledgement of Pay Rate and Payday under N.Y. Lab. Law § 195.1(a) within ten business days of their first employment date.

135.    Due to Defendants' violations of N.Y. Lab. Law § 195.1 on or after February 27, 2015, Nikonov and the Class Members are entitled to recover from Defendants $50.00 for each work day that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab. Law § 198(1)-b (2016).

SEVENTH CAUSE OF ACTION
FAILURE TO PROVIDE 195.3 WAGE STATEMENT
UNDER THE NEW YORK LABOR LAW
(On Behalf of Nikonov and the Class Members)

136.    Nikonov realleges every preceding allegation as if set forth fully herein.

137.    Defendants have willfully failed to supply Nikonov and the Class Members with an accurate wage statement with each payment of wages, violating N.Y. Lab. Law § 195.3.

138.    Due to Defendants' violations of N.Y. Lab. Law § 195.3 on or after February 27, 2015, Nikonov and the Class Members are entitled to recover from Defendants $250.00 for each work day that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab. Law § 198(1)-d (2016).

EIGHTH CAUSE OF ACTION
DISABILITY DISCRIMINATION
UNDER THE NEW YORK STATE HUMAN RIGHTS LAW
(On Behalf of Nikonov)

139.    Nikonov realleges every preceding allegation as if set forth fully herein.

140.    At all relevant times, Nikonov was an "employee" and "person" within the meaning of the NYSHRL and Defendants were "employers."

141.    The NYSHRL prohibits employment discrimination and harassment based on disability. N.Y. Exec. Law § 296(1)(a).

142.    Nikonov's migraines and painful and swollen feet constitute disabilities under the NYSHRL, N.Y. Exec. Law §§ 292(21)(a)-(c).

143.    Defendants discriminated against Nikonov based on his disabilities by threatening to terminate him for going to the hospital to take care of his painful and swollen feet, and by terminating him for needing time to inject himself with an anti-migraine shot before attending to a customer, violating the NYSHRL.

144.    Defendant Violeta and Defendant Ariel had the authority to affect Nikonov's employment terms and conditions.

145.    Defendant Violeta and Defendant Ariel are personally liable for the damages under this claim because they constitute employer and have both participated in the conduct giving rise to this claim. N.Y. Exec. Law §§ 296(1), 296(6).

146.    As a result of Defendants' discrimination of him, Nikonov has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

NINTH CAUSE OF ACTION
DISABILITY DISCRIMINATION
UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
(On Behalf of Nikonov)

147.    Nikonov realleges every preceding allegation as if set forth fully herein.

148.    At all relevant times, Nikonov was an "employee" and "person" under the NYCHRL and Defendants were "employers."

149.    Nikonov's migraines and painful and swollen feet constitute disabilities under the NYCHRL, N.Y.C. Admin. Code § 8-102(16)(a).

150.    Defendants treated Nikonov less well than his colleagues because of his disabilities by threatening to terminate him for going to the hospital to take care of his painful and swollen feet and by terminating him for needing time to inject himself with an anti-migraine shot, before attending to a customer.

151.    Flirt Beauty is strictly liable for the actionable discriminatory environment created by its supervisors who had immediate or successively higher authority over Nikonov.

152.    As a result of Defendants' discrimination and harassment of him, Nikonov has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

153.    Defendants discriminated against Nikonov with malice and/or reckless indifference to his rights under the NYCHRL.

154.    As a result of Defendants unlawful conduct, Nikonov can recover punitive damages against Defendants. N.Y.C. Admin. Code § 8-502.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Nikonov, on behalf of themselves and the Class and Collective Action Members, respectfully requests this Court grant the following relief:

a.    Back pay, front pay, and all benefits along with pre and post-judgment interest in the amount of at least $500,000 for Nikonov;

       b.      Damages for pain and suffering, including but not limited to, anxiety, humiliation, loss of enjoyment of life, physical injury and emotional distress, emotional pain and depression, and medical expenses in order to compensate Nikonov for the injuries he has suffered and to signal to other employers that discrimination and harassment are repulsive to legislative enactments in the amount of at least $500,0000.00;

       c.      Enjoins Defendants, their officers, agents, employees and anyone acting in concert with them, from discriminating or harassing against any of their employees;

       d.      Certifying this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Rule 23 Class Members and appointing Nikonov and his counsel to represent the Class Members;

       e.      Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Nikonov and his counsel to represent the Collective Action Members and tolling of the statute of limitations;

       f.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Labor Law;

       g.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

h. An award for unpaid minimum wage under the Labor Law and the FLSA;

i. An award for unpaid overtime premium pay, including, but not limited to, for "off the clock work," under the Labor Law and the FLSA;

j. An awarded for unlawfully retained gratuities under the Labor Law and the FLSA;

k. An award for unpaid spread-of-hours pay under the Labor Law;

l. An award for failing to provide the N.Y. LAB. LAW § 195.1 Notice;

m. An award for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

n. An award of liquidated damages as a result of Defendants' Labor Law violations;

o. An award of liquidated damages as a result of Defendants' willful FLSA violations;

a. Equitably tolling the statute of limitations under the FLSA;

b. An award of pre-judgment and post-judgment interest;

c. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

d. Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Nikonov demands a trial by jury on all questions

of fact the Complaint raises.

Dated: New York, New York
   July 30, 2019

       LIPSKY LOWE LLP


       <u>s/ Douglas B. Lipsky</u>
       Douglas B. Lipsky
       Milana Dostanitch
       420 Lexington Avenue, Suite 1830
       New York, New York 10170-1830
       Tel: 212.392.4772
       Fax: 212.444.1030
       doug@lipskylowe.com
       milana@lipskylowe.com

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of _Flirt Beauty Boutique, Violeta Chulpayeva & Ariel Chulpayvei_ to pay me the wages owed as required under the Fair Labor Standards Act and/or New York Labor Law and also authorize the filing of this consent in the action(s) challenging such conduct, and to preserve and pursue any claim that I may have to the greatest extent possible. I expressly consent to the use of this consent form for purposes of making me a party plaintiff in any lawsuit and/or lawsuits that Plaintiff's attorneys have brought and/or may bring on behalf of myself and other employees alleged to be similarly situated.

I authorize the representative plaintiff(s) and designate him/them class representative(s) as my agent(s) to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____
Signature

_____
Print Name     Denys Nikonov

7/30/2019
Date